James SHAW

v.

Thomas C. RAPONE, Leo Levandowski, Kenneth Matty, Joyce Mendham and Nicholas DiGregorio.

Civ. A. No. 82–0947.

United States District Court, E.D. Pennsylvania.

Feb. 3, 1984.

Jeffrey A. Lutsky, Philadelphia, Pa., for plaintiff.

P. James Tolan, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

KELLY, District Judge.

Presently before the court are: Defendants' Motion to Amend the Court's Findings of Fact and Conclusions of Law and Order of November 29, 1983, pursuant to the Federal Rules of Civil Procedure, Rule 52 or, in the alternative, Motion for a New Trial Pursuant to the Federal Rules of Civil Procedure, Rule 59; Plaintiff's Petition for Attorneys' Fees and Costs Pursuant to 42 U.S.C. § 1988; and Plaintiff's Motion to Amend and Make Additional Findings of Fact and Conclusions of Law Pursuant to the Federal Rules of Civil Procedure, Rule 52(b). These motions are addressed *seriatim*.

## I.

**Defendants' Motion to Amend the Court's Findings of Fact, Conclusions of Law, or Alternatively Motion for New Trial**

On November 17, 1983, a non-jury trial was held on plaintiff's civil rights claims against certain employees of the Delaware County Prison (DCP). On November 29, 1983, the Court entered judgment in favor of plaintiff and against defendant Leo Levandowski on plaintiff's claim that he was disciplined by DCP officials without due process of law. The Court found that plaintiff was confined to his cell for an alleged disciplinary infraction for a period of three to seven days. *James Shaw v. Warden Thomas C. Rapone, et al.* No. 82-0949, slip op. at 4 (E.D.Pa. November 29, 1983). Additionally, the Court found that plaintiff was confined without notice of hearing as required by regulations, such confinement being a violation of the due process clause. *Id.* at 9–10.

During direct examination at trial, plaintiff testified that he was confined in disciplinary lock-up for one week. Transcript at 61–62. Ozzie Trader, a fellow inmate at DCP, corroborated plaintiff's testimony by stating that plaintiff was in lock-up for at least several days, maybe more. *Id.* at 85–86.

During the direct examination of defendant Rapone, defendant was asked how long plaintiff had been confined in disciplinary lock-up. Defendant Rapone testified he did not remember. Defense counsel then attempted to read aloud to the witness his prior deposition testimony. Plaintiff's counsel objected at this point and the Court sustained the objection, holding that defense counsel could not lead his own witness through the use of a witness' prior deposition testimony. Defense counsel made no further reference to the deposition transcript and no offer of proof was made by defense counsel as to the witness' deposition testimony. (Transcript 137–138)

Defendants contend that the Court erred in excluding the deposition testimony of defendant Rapone. Defendants submit that anything may be used to refresh the recollection of a witness and that it was proper to use the deposition testimony of defendant Rapone .for this purpose. Defendants request that the Court amend its judgment or, in the alternative, grant leave to take additional testimony from defendant Rapone.

█ District courts have broad discretion in regard to the admissibility of evidence. *Parliament Insurance Co. v. Hanson,* 676 F.2d 1069, 1073 (5th Cir.1982); Weinstein's *Evidence,* § 612[01] (1st Ed., 1980). The seminal case in the Third Circuit with respect to refreshment of recollection is *United States v. Riccardi,* 174 F.2d 883 (3d Cir.1949); *cert. denied,* 337 U.S. 941, 69 S.Ct. 1519, 93 L.Ed. 1746 (1949). In *Riccardi,* the Third Circuit devolved to the district judge the burden to ascertain whether the witness was testifying upon or from a record or from his own recollection. *United States v. Riccardi,* 174 F.2d at 889.

█ "[T]he trial judge must determine whether the device of refreshing recollection is merely a subterfuge to improperly suggest to the witness the testimony expected of him." *United States v. Riccardi,* 174 F.2d at 889; *See also, Parliament Insurance Co. v. Hanson,* 676 F.2d 1069, 1073 (3d Cir.1982). I am convinced that defense counsel's use of defendant Rapone's deposition testimony would have been such a "subterfuge to improperly suggest" the desired testimony.

Defendants rely upon *United States v. Booz,* 451 F.2d 719 (3d Cir.1971) such reliance is misplaced. In *Booz* the witness' memory had been refreshed before trial and counsel admitted to evidence the F.B.I. report. Here defendants' counsel attempted to read the deposition aloud in the presence of the fact-finder. In *Booz* the Third Circuit stated: "The rule in cases of refreshed recollection is that the writing may not be admitted into evidence or its contents even seen by the jury." *United States v. Booz,* 451 F.2d at 725.

## II.

### Plaintiff's Petition for Attorneys' Fees and Costs

■ Presently before the Court is Plaintiff's Petition for Attorneys' Fees and Costs Pursuant to 42 U.S.C. § 1988. As the prevailing party, plaintiff is entitled to an award of attorneys' fees and costs. 42 U.S.C. § 1988. Defendant argues that there should be no award of attorneys' fees because plaintiff was awarded nominal damages against one of five defendants. I disagree.

■ In *McCann v. Coughlin,* 698 F.2d 112 (2d Cir.1983), the Second Circuit upheld an award of almost $50,000 to the attorneys of a civil rights case despite the fact that the plaintiff did not prevail on all of his claims and was awarded $1.00 in nominal damages. Rejecting any reduction in attorneys' fees, the Second Circuit reasoned that:

> [t]he policy underlying the statute is to encourage litigants to assume the role of a private Attorney General. *This policy may be served by granting a fee request even where a plaintiff is unable to prove actual damages resulting from his constitutional deprivation.* The Supreme Court's decision in *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), makes clear that a party may prove a violation of his due process rights and still be unable to show the requisite causation required for an award of compensatory damages. *The fact that a plaintiff is awarded only nominal damages does not indicate that he has been unsuccessful or has not prevailed on his claim. Accordingly, the district court did not err in declining to reduce the requested fee award simply because McCann was awarded only $1.00 in nominal damages.*

*McCann v. Coughlin,* 698 F.2d at 128. (emphasis added).

The Third Circuit in *Lindy Brothers Builders, Inc. v. American Radiator and Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973) (*Lindy I*), 540 F.2d 102 (3d Cir.1976) (*Lindy II*) and their progeny require the district court to find an objective or lodestar figure based on the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate and then, if necessary, to adjust that figure accordingly by a multiplier. The Third Circuit has suggested that, in public interest civil rights litigation there can be a "post-Lindy discretionary upward adjustment," *i.e.,* the multiplier, to reflect the "important substantive purposes of the Civil Rights Act." *Hughes v. Repko,* 578 F.2d 483, 487–88 (3d Cir.1978); *Bagby v. Beal,* 606 F.2d 411 (3d Cir.1979); *Vecchione v. Wohlgemuth,* 481 F.Supp. 776 (E.D.Pa.1979).

In its most recent decision on the recovery of attorneys' fees in a Section 1983 civil rights action, the United States Supreme Court held that a plaintiff is entitled to attorneys' fees "[i]f he succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This plaintiffs' counsel did.

Thus, the limited issue for the court to decide is what fee is "reasonable". The Third Circuit and U.S. Supreme Court have found that the most useful starting point is the number of hours reasonably expended in the litigation, multiplied by a reasonable hourly rate. *Id.* at ——, 103 S.Ct. at 1939, 76 L.Ed.2d at 50. After careful review of this petition's Exhibit "A" (plaintiff's time sheets) I find the number of hours plaintiff expended drafting pleadings, taking depositions and trying this matter to be more than reasonable at 156.6 hours. Plaintiff is requesting an hourly rate of fifty-five ($55.00) dollars which is also more than reasonable based on my observations of the pleadings and counsel's ability during trial. A multiplier of 1.5% will be assessed to the sum of hours times attorneys' fees. *Hughes,* 578 F.2d at 487–88. This is based upon plaintiff's counsel's able representation and counsel's clear establishment of a right to administrative procedures in Penn-

sylvania prior to the infliction or setting of any punishment. *James Shaw v. Warden Thomas C. Rapone, et al.*, C.A. No. 82–0949, slip op. at 9 (E.D.Pa. Nov. 29, 1983). Plaintiff *further* seeks and is awarded the sum of $364.00 for work performed by Sandra A. Girifalco, Esquire, (5.2 hrs. at $70.00 per hour); the sum of $810.00 for work performed by Helen Doney (18.0 hrs. at $45.00 per hour); and the sum of $522.59 is awarded to Jeffrey A. Lutsky, Esquire, for the preparation of this fee petition (9.5 hrs. at $55.00 per hour), plus costs of $723.10.

### III.

#### Plaintiff's Motion to Amend And Make Additional Findings of Fact and Conclusions of Law

Before the court is Plaintiff's Motion Pursuant to the Federal Rules of Civil Procedure, Rule 52(b).

Plaintiff alleged that the DCP Classification Committee, composed of defendants Thomas C. Rapone, Kenneth Matty, Joyce Mendham and Nicholas DiGregorio confined plaintiff in administrative segregation upon entry to DCP as a "federal lodger". Plaintiff further alleges the court made no finding as to whether defendants as members of the Classification Committee provided plaintiff with an opportunity to be heard in support of his desire to be housed in the general population before confining him in administrative segregation. I disagree. *See, Shaw v. Rapone*, No. 82–0947, slip op. at 8, (E.D.Pa. Nov. 29, 1983). Joyce Mendham's recommendation to the Classification Committee that plaintiff be placed in administrative segregation was affirmed.

■ Plaintiff requests that this Court amend and supplement its findings of fact and conclusions of law to include the following:

1. Plaintiff was confined in administrative segregation without an opportunity to be heard or to make a written statement to the Delaware County Prison Classification Committee regarding his security needs and his desire to be housed in the general inmate population; 2. The failure of the Delaware County Prison Classification Committee to provide plaintiff an opportunity to be heard before confining him in administrative segration was a due process violation.

The defendants' position is that the Classification Committee acted within their lawful discretion in classifying the plaintiff and afforded him the proper procedure before placing him in administrative confinement. Thus, the specific issue before the court is whether the plaintiff was afforded the minimum requirements of the Due Process Clause. "In determining what is 'due process' in the prison context, we are reminded that 'one cannot automatically apply procedural rules designed for free citizens in an open society ... to the very different situation presented by a disciplinary proceeding in a state prison.' *Wolff v. McDonnell* [418 U.S. 539, 560, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 336 (1974) ]", *Hewitt v. Helms*, 459 U.S. 460 at 472, 103 S.Ct. 864 at 872, 74 L.Ed.2d 675 (1983).

The plaintiff cites to *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), as controlling. In *Hewitt v. Helms*, the United States Supreme Court held that once a liberty interest is found due process requires that an inmate receive "notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Hewitt v. Helms*, 459 U.S. 460 at 476, 103 S.Ct. 864 at 874, 74 L.Ed.2d 675 (1983).

In my opinion of November 29, 1983 I found that the plaintiff was given written notice that his restricted custody was due to his status as a federal lodger. *James Shaw v. Thomas C. Rapone, et al.*, No. 82–0947 slip op. at 8 (E.D.Pa. Nov. 29, 1983). *See* transcript at 128. The testimony at trial concludes that upon arrival to DCP the only information that accompanied plaintiff was a United States Marshal's overnight slip which merely stated that plaintiff was a Federal prisoner and "no bail". (Transcript at 27) In DCP the

classification procedure places such a prisoner in maximum security status because a reasonable judgment cannot be made without a rap sheet and "no bail" is a *prima facia* indicator of maximum status. (*Id.* at 27). The Warden testified that the classification procedure is needed for proper jail management, safety of the institution's staff and safety of the inmates. (*Id.* at 129)

The United States Supreme Court's case-law is replete with precedent supporting the actions of the classification committee. In *Rhodes v. Chapman*, 452 U.S. 337, 349 n. 14, 101 S.Ct. 2392, 2400 n. 14, 69 L.Ed.2d 59 (1981), "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." *Accord, Hewitt v. Helms*, 459 U.S. 460 at 472–475, 103 S.Ct. 864 at 872–73; 74 L.Ed.2d 675 (1983). Similarly in *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979), the Court held that "[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *See also, Hewitt v. Helms*, 459 U.S. 460 at 472, 103 S.Ct. 864 at 872, 74 L.Ed.2d 675 (1983) (wherein this cite is also made).

Based upon a careful review of the motion and caselaw cited therein and transcript of testimony, I deny plaintiff's motion to amend and make additional findings of fact and conclusions of law.

An appropriate Order follows.

## ORDER

AND NOW, this 3rd day of February, 1984, in accordance with foregoing Memorandum, it is hereby ORDERED and DECREED that:

1. Defendants' Motion to Amend the Court's Findings of Fact and Conclusions of Law and Order of November 29, 1983 or, in the alternative, Motion for a New Trial is DENIED.

2. Plaintiff's Petition for Attorneys' Fees is GRANTED in the amount of $14,450.50 and $723.10 for costs.

3. Plaintiff's Motion to Amend and Make Additional Findings of Fact and Conclusions of Law is DENIED.